**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| **INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND, et al.** | * <br> * <br> * |
| Plaintiffs, | * |
| v. | Case No. ELH-11-3093 |
|  | * |
| **CHAUNCEY BROOKS** <br> **d/b/a BROOKS BROTHERS PAINTING** <br> **d/b/a BROOK'S BROTHER'S PAINTING,** | * <br>  <br> * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**REPORT AND RECOMMENDATION**

The above-referenced case was referred to the undersigned for review of plaintiffs' motion for default judgment and to make recommendations concerning damages, pursuant to 28 U.S.C. § 301 and Local Rule 301.6. (ECF No. 11.) Currently pending is plaintiffs' Motion for Judgment by Default by the Court Pursuant to Federal Rule of Civil Procedure 55(b)(2) against Defendant ("Motion" or "Motion for Default Judgment") (ECF No. 10.) No hearing is deemed necessary. See Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6. For the reasons discussed herein, the undersigned respectfully recommends that plaintiffs' Motion (ECF No. 10) be GRANTED and that relief be awarded as set forth herein.

**I. BACKGROUND**

International Painters and Allied Trades Industry ("IPAT") Pension Fund ("Pension Fund") and Gary J. Meyers ("Mr. Meyers") (collectively, "plaintiffs") brought this suit against Chauncey Brooks d/b/a Brooks Brothers Painting d/b/a/ Brook's Brother's Painting

("defendant") for alleged breach of contract in violation of § 185 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141, et seq., and violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, et seq. (ECF No. 1.)

Defendant is a party to a collective bargaining agreement ("CBA") with "one or more local labor unions or district councils affiliated with the International Union of Painters and Allied Trades, AFL-CIO, CLC" (collectively, "Union"), whose members it employs. (Id. ¶ 12.) The CBA obligates defendant to file timely contribution reports and to make timely contributions to three different beneficiaries for time worked by or paid to Union workers. (CBA, ECF No. 1, Ex. 1, Arts. VI, XI.) Those beneficiaries are: (1) Pension Fund; (2) International Painters and Allied Trades Industry Pension Plan ("Pension Plan"); and (3) International Painters and Allied Trades Industry Annuity Plan ("Annuity Plan") (collectively, "ERISA Funds" or "Funds"). (Id., Art. XI.) Defendant is also a party to the Agreement and Declaration of Trust ("Trust Agreement") that establishes the Pension Fund, which incorporates by reference the Plan Rules and Regulations ("Plan" or "Plan Rules") for the Pension Plan and Annuity Plan, and, accordingly, is bound by their terms. (ECF No. 1 ¶ 13); (Trust Agreement, ECF No. 1, Ex. 2); (Plan Rules, ECF No. 1, Ex. 3).[1] The CBA and the incorporated Trust Agreement authorize the trustees of the Funds to "audit the payroll, wage, and other relevant records of [defendant] for the purpose of determining the accuracy of contributions to each respective Fund" and require defendant to produce the books and records deemed necessary for an audit. (ECF No. 1, Ex. 1, Art. XI); (ECF No. 1, Ex. 2, Art. VI §§ 4, 6). If defendant does not cooperate with a scheduled

---

[1] Plaintiffs attached copies of the CBA, Trust Agreement, and the Plan Rules for the Pension Plan in support of their Complaint. (ECF No. 1, Exs. 1-3.) Plaintiffs did not attach a copy of the Plan Rules for the Annuity Plan, but, in their Complaint, plaintiffs state that "correct copies of the … Pension Plan are attached as Exhibit 3, and the Annuity Plan has parallel terms." (ECF No. 1 ¶ 13.)

audit, defendant must pay the costs of the audit.  (ECF No. 1, Ex. 2, Art. VI §§ 4, 6.)   In addition, if defendant is found to be delinquent in its payment of contributions as required by the CBA and incorporated Trust Agreement and Plan Rules, defendant must pay liquidated damages, interest, audit costs, and attorneys' fees and costs.  (ECF No. 1 ¶ 14); (ECF No. 1, Ex. 1, Art. XI); (ECF No. 1, Ex. 2, Art. VI §§ 4, 6); (ECF No. 1, Ex. 3 §§ 10.07, 10.12).

The Pension Fund is a trust fund established under section 302(c)(5) of the LMRA.  29 U.S.C. § 186(c)(5); (ECF No. 1 ¶ 4).  The Pension Fund's trustees are the "named fiduciary," "plan administrator," and "plan sponsor," and each is an individual "fiduciary" for the IPAT Pension Plan ("Pension Plan") and the IPAT Annuity Plan ("Annuity Plan") within the meaning of ERISA.  (ECF No. 1 ¶ 4.)  The Pension Plan and Annuity Plan are "multiemployer plans" within the meaning of ERISA.  (Id. ¶¶ 5, 6.)  The Pension Fund and Mr. Meyers are authorized collection fiduciaries and agents of the Pension Plan and the Annuity Plan.  (Id. ¶ 8.)

On October 31, 2011, plaintiffs filed this suit, alleging that defendant failed to pay "at least" $71,467.29 in contributions to the Pension Fund for the period of August of 2010 through September of 2011 as required by the CBA, Trust Agreement, and Plan documents.  (Id. ¶ 17.) Plaintiffs also allege that defendant failed to pay contributions "in a [time] period not barred by an applicable statute of limitations or similar bar."  (Id. ¶ 28.)  In their Complaint, plaintiffs sought:  (1) to recover the unpaid contributions as well as liquidated damages, interest, attorneys' fees, and costs, including the cost of any audit; (2) an injunction ordering defendant to submit to and pay for an audit or to cooperate with "alternative methods" to determine the total amount of contributions due; and (3) to recover any other unpaid contributions discovered during the audit.  (Id. ¶¶ 18, 26, 29, 33, 35.)

Defendant was served with a Summons and copy of plaintiffs' Complaint on November 21, 2011, as indicated by the return of service filed with the court on December 23, 2011.  (ECF Nos. 3, 4.)  When defendant failed to file an answer or otherwise defend, on February 10, 2012, Judge Hollander ordered plaintiffs to "file a motion for entry of default and a motion for default judgment, or to provide a report as to why such motions would be inappropriate" within 30 days.  (ECF No. 5.)  In response to the court's Order, on March 9, 2012, plaintiffs filed a status report stating that defendant had cooperated with plaintiffs' auditors and allowed an audit to be conducted, but that there was a delay in preparing the audit report because defendant had paid some Annuity Fund contributions owed to the Union.   (ECF No. 6 ¶¶ 3-4.)  In that status report, plaintiffs also stated that "the Funds' audit provisions allow 5 days for a Company to submit any disputes to the audit to the Fund for review and consideration."  (Id. ¶ 6.)  Plaintiffs, therefore, requested "an additional 30 days to allow defendant to dispute the audit, permit the Funds' auditors to evaluate the disputes, and prepare a revised report if necessary." (Id. ¶ 7.)  Judge Hollander granted plaintiffs' request by Margin Order on March 12, 2012.  (ECF No. 7.)  Thereafter, on April 2, 2012, plaintiffs filed a Request to Enter Default Pursuant to F.R.C.P. 55(a) (ECF No. 8), which the Clerk granted on April 3, 2012.  (ECF No. 9.)  On April 9, 2012, plaintiffs filed the instant Motion for Default Judgment.  (ECF No. 10.)  Thereafter, Judge Hollander referred plaintiffs' Motion to the undersigned to review and to make recommendations concerning damages.  (ECF No. 11.)

## II. STANDARD FOR ENTRY OF DEFAULT JUDGMENT

In reviewing a motion for default judgment, the court accepts as true the well-pleaded factual allegations in the complaint as to liability.  Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780-81 (4th Cir. 2001).  It remains for the court, however, to determine whether these

4

unchallenged factual allegations constitute a legitimate cause of action. Id.; see also 10A Wright, Miller & Kane, Federal Practice and Procedure § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If the court determines that liability is established, the court must then determine the appropriate amount of damages. Ryan, 253 F.3d at 780-81. The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. E.g., Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 154 (2d Cir. 1999). In so doing, the court may conduct an evidentiary hearing. Fed. R. Civ. P. 55(b)(2). The court may also make a determination of damages without a hearing, so long as there is an adequate evidentiary basis in the record for the award. See, e.g., Stephenson v. El-Batrawi, 524 F.3d 907, 917 n.11 (8th Cir. 2008) ("Foregoing an evidentiary hearing may constitute an abuse of discretion when the existing record is insufficient to make the necessary findings in support of a default judgment."); Adkins v. Teseo, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (court need not make determination of damages following entry of default through hearing, but rather may rely on detailed affidavits or documentary evidence to determine the appropriate sum). In addition, with respect to the character of the amount and judgment, Rule 54(c) of the Federal Rules of Civil Procedure provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

In sum, the court must (1) determine whether the unchallenged facts in plaintiff's Complaint constitute a legitimate cause of action, and, if they do, (2) make an independent determination regarding the appropriate amount of damages.

## III. **DISCUSSION**

### A. **Defendant's Liability**

Plaintiffs allege two primary causes of action.  First, plaintiffs claim that defendant breached the terms of the CBA as well as the incorporated Trust Agreement and Plan documents by failing to make all of its required contributions from August of 2010 through September of 2011, as well as another unspecified time "period," and that this breach constitutes a violation of § 515 of ERISA.  (ECF No. 1 ¶¶ 16-18, 28.)  Section 515 of ERISA obligates employers subject to a multi-employer plan or collective bargaining agreement to make contributions in accordance with the terms of the plan or agreement; section 502 authorizes parties to a CBA or plan to enforce their terms.  29 U.S.C. §§ 1132, 1145.  Here, the well-pled allegations in plaintiffs' Complaint allege that defendant was bound by the terms of the CBA and that, between the months of August of 2010 and September of 2011, defendant breached the CBA by failing to pay contributions due to the ERISA Funds under the CBA's terms.  (ECF No. 1 ¶¶ 12-14, 16-18.)  The Complaint also asserts that "defendant has failed to make contributions to the ERISA Funds … in a period not barred by an applicable statute of limitations or similar bar."  (Id. ¶ 28.)  As discussed above, the Complaint also alleges that the Pension Plan and Annuity Plan are "multiemployer plans" within the meaning of ERISA.  (Id. ¶¶ 5, 6.)  The undersigned concludes that the unchallenged factual allegations in the Complaint constitute a legitimate cause of action under ERISA.

Plaintiffs' second cause of action asserts they may also enforce the terms of the CBA under § 301 of the LMRA, 29 U.S.C. § 185.  (ECF No. 1 ¶¶ 30-33.)  The LMRA confers jurisdiction on United States district courts to hear suits alleging violations of a contract "between an employer and a labor organization representing employees in an industry affecting

commerce." 29 U.S.C. § 185(a). The LMRA also authorizes plaintiffs, as an employee benefit trust fund and trustee, to bring such an action to enforce the terms of the CBA and to seek remedies for its breach. Id.; Int'l Painters & Allied Trades Indus. Pension Fund, et al. v. H.C. Ackerman & Son, Inc., 2012 WL 251963, at *2 (D. Md. Jan. 24, 2012) (finding plaintiffs, benefit trust fund and trustee, as intended third party beneficiaries of a CBA, had standing to sue under 29 U.S.C. § 185(a)). As discussed above, plaintiffs' Complaint alleges that defendant breached the CBA by failing to pay contributions due to the ERISA Funds. (ECF No. 1 ¶¶ 12-14, 30-32.) Specifically, plaintiffs' Complaint asserts that defendant has "failed to pay amounts due … in at least the sum of $71,467.29." (Id. ¶ 32.) Plaintiffs' Complaint also alleges that "plaintiffs have been damaged as a proximate result of the breach of the Labor Contract and/or its incorporated documents by defendant." (Id. ¶ 33.) The undersigned concludes that the unchallenged factual allegations in the Complaint constitute a legitimate cause of action under the LMRA. Accordingly, in addition to seeking remedies under ERISA, plaintiffs may enforce the terms of the CBA under the LMRA. See Hudson Cnty. Carpenters Local Union No. 6 v. V.S.R. Constr. Corp., 127 F. Supp. 2d 565, 568 (D. N.J. 2000) ("It is well-established that a failure to make contributions to a union trust fund as required by a [CBA] constitutes a violation of ERISA § 515 and a violation of LMRA § 301.").

    **B. Damages**

Having determined that plaintiffs have proven liability, the undersigned now undertakes an independent determination of the damages to which they are entitled. Pursuant to ERISA, the LMRA, the terms of the CBA, and the incorporated Trust Agreement and Plan documents, plaintiffs seek to recover a total sum of $155,828.99 from defendant.[2]  (ECF Nos. 10, 10-2.)

---

[2] Both the Plan documents and ERISA provide for the following mandatory remedies as

7

This requested sum includes damages against defendant in the amount of $153,004.00, broken down as follows: (1) unpaid contributions totaling $123,004.30; (2) liquidated damages totaling $24,600.85; (3) interest in the amount of $5,398.83; and (4) audit costs in the amount of $2,825.01. (Id.)

To prove their damages, plaintiffs submit: (1) the CBA entered into by defendant and the Union (ECF No. 10, Ex. 2); (2) the Trust Agreement for the Pension Fund (ECF No. 10, Ex. 3); (3) the Plan Rules and Regulations for the Pension Plan (ECF No. 10, Ex. 4); and (4) the Affidavit of Mr. Thomas C. Montemore ("Mr. Montemore"), Assistant to the Fund Administrator of the plaintiff Pension Fund. (ECF No. 10, Ex. 1.) In his affidavit, Mr.

---

to unpaid contributions in violation of § 515 of ERISA:

> (A) recovery of the unpaid contributions;
> (B) interest on unpaid contributions (at rate for underpayment of federal income taxes under IRC 6621);
> (C) liquidated damages equal to the greater of
>     i. interest on unpaid contributions, or
>     ii. 20 percent of the unpaid contributions
> (D) reasonable attorney's fees and costs of the action; and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2); (ECF No. 10, Ex. 4 § 10.12).

The CBA provides that, if an employer bound by the CBA fails to make contributions within 20 days of the due date, "the Employer shall be liable for all costs of collecting the payments due, together with the attorneys' fees and such penalties as may be assessed by the Trustees of each respective Fund." (ECF No. 10, Ex. 2, Art. XI.)

The Trust Agreement of the Pension Fund provides for the following remedies if an employer is in default for 20 days: (1) "[A] reasonable rate of interest as the trustees may fix on the money due to the trustees from the date when the payment was due to the date when payment is made;" (2) "all expenses of collection (including attorneys' fees) incurred by the trustees;" and (3) "such liquidated damages and penalties as may be assessed by the trustees." (ECF No. 10, Ex. 3, Art. VI § 4.) The Trust Agreement also provides for the recovery of audit costs if an audit of a signatory employer's payroll books and related records reveals a delinquency to the Pension Fund. (Id., Art VI § 6.)

Montemore includes the following table, which summarizes the amounts that defendant allegedly owes the Pension Fund: [3]

---

[3] Mr. Montemore's affidavit is inconsistent with plaintiffs' Complaint. In his affidavit, Mr. Montemore states that:

> The Pension Fund is the authorized collection agent for the Annuity Plan, Finishing Trades Institute f/k/a/ International Union of Painters and Allied Trades Joint Apprenticeship and Training Fund ("FTI"), the Political Action Together Fund, which includes the Political Action Together – Legislative and Educational Committee and Political Action Together – Political Committee (jointly or severally, "PAT Fund") and the Painters and Allied Trades Labor Management Cooperation Initiative ("LMCI" and jointly with FTI and PAT, "Ancillary Funds"), pursuant to an agreement by and among the Funds.

(ECF No. 10, Ex. 1 ¶ 5.) In their Complaint, however, plaintiffs assert as follows:

> The [Pension] Fund and Mr. Meyers are authorized collection fiduciary(ies) and agent(s) for:
> (a) the Pension Plan, and the
> (b) Annuity Plan.

(ECF No. 1 ¶ 8.) In reviewing a motion for default judgment, it remains for the court to determine whether the unchallenged factual allegations in the Complaint constitute a legitimate cause of action. Ryan, 253 F.3d at 780-81 (4th Cir. 2001). In addition, Rule 54(c) of the Federal Rules of Civil Procedure provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). In this case, FTI, the PAT Fund, and LMCI (collectively, "Ancillary Funds") are not mentioned in plaintiffs' Complaint. Compare Compl. ¶¶ 8-10, ECF No. 1 (stating that "[Pension] Fund and Mr. Meyers are authorized collection fiduciary(es) and agent(s) for: (a) the Pension Plan, and the (b) Annuity Plan" and that plaintiffs "sue on behalf of the Pension Plan and the Annuity Plan") with Complaint ¶¶ 8-13, Int'l Painters and Allied Trades Industry Pension Fund, et al. v. DLC Corp., Inc., et al., 2012 WL 1229491 (D. Md. Apr. 11, 2012) (complaint filed by same plaintiffs and prepared by same law firm as plaintiffs' Complaint in instant case, stating that "[Pension] Fund and Mr. Meyers are authorized collection fiduciary(ies) and agent(s) for: (a) the Pension Plan, (b) the Annuity Plan, (c) [FTI], and (d) the Ancillary Fund," LMCI, and that plaintiffs "sue on behalf of the Pension Plan, the Annuity Plan, FTI, and LMCI"). Accordingly, the undersigned finds that plaintiffs' allegations in the Complaint are insufficient to constitute a legitimate cause of action against defendant as to the Ancillary Funds, and the undersigned recommends denying plaintiffs' request for damages as to the Ancillary Funds.

9

| Fund | Contributions | Interest | Liquidated Damages | Audit Costs | TOTAL |
|---|---|---|---|---|---|
| **Pension Fund** | $64,264.90 | $2,780.88 | $12,852.98 | $1,694.02 | **$81,592.78** |
| **Annuity Fund[4]** | $55,688.32 | $2,473.99 | $11,137.66 | $1,086.59 | **$70,386.56** |
| **FTI** | $1,016.16 | $47.97 | $203.23 | $14.80 | **$1,282.16** |
| **LMCI** | $1,018.76 | $48.02 | $203.75 | $14.80 | **$1,285.33** |
| **PAT** | $1,016.16 | $47.97 | $203.23 | $14.80 | **$1,282.16** |
| **TOTAL** | **$123,004.30** | **$5,398.83** | **$24,600.85** | **$2,825.01** | **$155,828.99** |

### 1. Unpaid Contributions

Plaintiffs seek to recover unpaid contributions for the period of July of 2009 through February of 2012 totaling $123,004.30. (ECF Nos. 10, 10-2.) In his affidavit, Mr. Montemore notes that this amount is "based on an audit conducted … for the period of July 2009 through December 2011, which revealed a delinquency of $118,788.08, as well as estimates for the months of January 2012 and February 2012." (Id. ¶ 9.) Mr. Montemore explains that because defendant did not submit contributions or a remittance report for January and February of 2012, plaintiffs have had to estimate the amount of contributions due for those months. (Id.) Mr. Montemore further details that plaintiffs reached "this estimate … by averaging the three months

---

[4] The undersigned notes that, in the table included in Mr. Montemore's affidavit, Mr. Montemore names the Annuity Plan the "Annuity Fund." In the text of his affidavit, however, Mr. Montemore states that the "Annuity Plan is an 'employee benefit pension plan' as defined in … ERISA." (ECF No. 10, Ex. 1 ¶ 3.) Mr. Montemore also states that "[t]he Pension Fund is the authorized collection agent for the Annuity Plan." (Id. ¶ 5.) Other than the listing in the table, there is no reference to an entity named the "Annuity Fund" in Mr. Montemore's affidavit. (ECF No. 10, Ex. 1.) Accordingly, it appears that Mr. Montemore's table contains a typographical error.

of contributions prior to the first month in which no report is received."[5] (Id.) Based on the audit and estimates calculated by plaintiffs, the balance of unpaid contributions owed by defendant to plaintiffs is $119,953.22.[6] The undersigned finds that, with the exception of contributions allegedly owed to the Ancillary Funds, plaintiffs have presented sufficient evidence to establish the amount of unpaid contributions that they are entitled to collect. Accordingly, the undersigned recommends granting, in part, plaintiffs' request to recover damages for unpaid contributions in the amount of $119,953.22.

## 2. Interest

Plaintiffs seek interest assessed against defendant for unpaid contributions through April 2, 2012 in the amount of $5,398.83. (ECF Nos. 10, 10-2.) ERISA provides for an award of interest on unpaid contributions "determined by using the rate provided under the [relevant multiemployer] plan." 29 U.S.C. § 1132(g)(2). The CBA, through the incorporated Plan documents, prescribes an interest rate "determined at the rate for underpayment of federal income taxes under IRC 6621." (ECF No. 10, Ex. 4 § 10.12(b).) Accordingly, plaintiffs are entitled to interest at the rate prescribed in 26 U.S.C. § 6621. In his affidavit, Mr. Montemore

---

[5] In his affidavit, Mr. Montemore states that the contribution amounts for October through December of 2011 total $6,324.32. (ECF No. 10, Ex. 1 ¶ 9.) Mr. Montemore further explains that "$6,324.32 divided by three equals $2,108.11, which is used as the estimated monthly contribution amount for January 2012 through February 2012." Id.; see, e.g., H.C. Ackerman & Son, Inc., 2012 WL 251963, at *2 (same method of estimating contributions approved by this court).

[6] As discussed above, plaintiffs do not state any factual allegations as to the Ancillary Funds in their Complaint. Accordingly, the undersigned finds that plaintiffs' allegations are insufficient to constitute a legitimate cause of action against defendant as to the Ancillary Funds, and the undersigned recommends denying plaintiffs' request for damages as to the Ancillary Funds. Consistent with this recommendation, the undersigned calculated the $119,953.22 figure above by subtracting the amounts of unpaid contributions allegedly owed by defendant to the Ancillary Funds, which total $3051.08, from the $123,004.30 figure submitted by plaintiffs. (ECF No. 10-2.)

states that the amount of interest shown in the table "has been calculated in accordance with the fluctuating IRS interest rate, as provided at section 10 of the Plan." (ECF No. 10, Ex. 1 ¶ 9.) I find that, with the exception of interest allegedly owed to the Ancillary Funds, this evidence adequately establishes the interest that plaintiffs are entitled to collect. Accordingly, the undersigned recommends granting, in part, plaintiffs' request for interest in the amount of $5,254.87.[7]

### 3. Liquidated Damages

Plaintiffs seek a total sum of $15,763.06 in liquidated damages. (ECF Nos. 10, 10-2.) Section 10 of the Plan "parallels" § 502(g)(2) of ERISA, and provides for liquidated damages equal to the greater of: (1) the accrued interest on the unpaid contributions; or (2) twenty (20) percent of the unpaid contributions. 29 U.S.C. § 1132(g)(2); (ECF No. 10, Ex. 4 § 10.12(b)); (ECF No. 10, Ex. 1 ¶ 9). Mr. Montemore explains that, in this case, the accrued interest on defendant's unpaid contributions, $5,398.83, is less than 20 percent of the unpaid contributions, $24,193.87, and that, accordingly, defendant owes liquidated damages in the amount of $24,193.87. (ECF No. 10, Ex. 1 ¶ 9.) The undersigned finds that, with the exception of liquidated damages allegedly owed as to the Ancillary Funds, this evidence is adequate to establish the liquidated damages that plaintiffs are entitled to collect. Accordingly, the undersigned recommends granting, in part, plaintiffs' request for liquidated damages in the amount of $23,990.64.[8]

---

[7] The undersigned calculated this $5,254.87 figure by subtracting the amounts of interest allegedly owed by defendant to the Ancillary Funds, which total $143.96, from the $5,398.83 figure submitted by plaintiffs. (ECF No. 10-2.)

[8] As discussed above, the undersigned recommends denying plaintiffs' request for damages as to the Ancillary Funds and, accordingly, the undersigned finds that the balance of unpaid contributions owed by defendant to plaintiffs is $119,953.22. Twenty percent of the balance of unpaid contributions is $23,990.64. As discussed above, plaintiffs are entitled to

### 4. <u>Audit Costs</u>

Plaintiffs also seek a total sum of $2,825.01 in audit costs. (ECF Nos. 10, 10-2.) ERISA provides for an award of "other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2). The Trust Agreement of the Pension Fund provides for recovery of audit costs if an audit of a signatory employer's payroll books and related records reveals a delinquency to the Pension Fund. (ECF No. 10, Ex. 3, Art. VI § 6.) In his affidavit, Mr. Montemore states that:

> On February 8, 2012, the Pension Fund completed an audit of the defendant's payroll books and related records covering the period July 2009 through December 2011, which revealed a delinquency of $118,788.08. Consequently, [defendant] owes the Pension Fund audit costs of $2,825.01.

(ECF No. 10, Ex. 1 ¶ 6.) The undersigned finds that, with the exception of audit costs allegedly owed as to the Ancillary Funds, this evidence adequately establishes that the amount of audit costs that plaintiffs seek is appropriate. Accordingly, the undersigned recommends granting, in part, plaintiffs' request to recover the costs of an audit in the amount of $2,780.61[9]

In sum, the undersigned recommends that the court award plaintiffs a total of $151,979.34 in damages, interest, liquidated damages, and audit costs pursuant to ERISA, the CBA, and the incorporated Trust Agreement and Plan documents. See <u>Trs. of Glaziers Local 963 Pension, Welfare, & Apprentice Funds v. Walker & Laberge Co., Inc.</u>, 619 F. Supp. 1402, 1405 (D. Md. 1985) (plaintiff may recover liquidated damages and interest on late contributions

---

collect a total of $5,254.87 in accrued interest on these unpaid contributions. Because $5,254.87 is less than 20 percent of the unpaid contributions, $23,990.64, the undersigned finds that, pursuant to the Plan documents and ERISA, defendant owes liquidated damages in the amount of $23,990.64. 29 U.S.C. § 1132(g)(2); (ECF No. 10, Ex. 4 § 10.12(b)).

[9] The undersigned calculated this $2,780.61 figure by subtracting the amounts of audit costs allegedly owed by defendant as to an audit of the Ancillary Funds, which total $44.40, from the $2,825.01 figure submitted by plaintiffs. (ECF No. 10-2.)

to employee benefit plan under terms of collective bargaining agreement and incorporated trust agreements); see also Laborers' District Council Pension, et al. v. E.G.S., Inc., 2010 WL 1568595, at *4 (D. Md. Apr. 16, 2010) (recommending that district court award damages for unpaid contributions, liquidated damages, and interest in ERISA default judgment action pursuant to collective bargaining and trust agreements).

### C. Other Relief

In addition to damages, plaintiffs seek attorneys' fees, costs, and injunctive relief.

#### 1. Attorneys' Fees and Costs

Plaintiffs request $2,370.00 in attorneys' fees and $507.03 in costs of suit, totaling $2,877.03. (ECF Nos. 10, 10-2.) Both the CBA and ERISA mandate an award of "reasonable" attorneys' fees and costs. 29 U.S.C. § 1132(g)(2); (ECF No. 10, Ex. 4 § 10.12(b)). In order to properly determine an award of reasonable attorneys' fees, the court must calculate the "lodestar amount" by multiplying the number of hours reasonably expended times a reasonable hourly rate. Blum v. Stenson, 465 U.S. 886, 888 (1984); Grissom v. Mills Corp., 549 F.3d 313, 320-21 (4th Cir. 2008). The plaintiff must demonstrate that "the number of hours for which [they] seek[] reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary." Travis v. Prime Lending, 2008 WL 2397330, at *4 (W.D. Va. June 12, 2008).

In support of their request for attorneys' fees and costs, plaintiffs submit the affidavit of Ms. Judith Sznyter, Esquire ("Ms. Sznyter"), an attorney with the law firm retained by plaintiffs. Ms. Sznyter attaches an itemization of legal fees and costs ("itemized bill") incurred in the instant case in accordance with this court's Local Rules. Loc. R. 109.2, App. B. § 3. (Counsel Aff., ECF No. 10, Ex. 5); (Time & Expense Details, ECF No. 10, Ex. 6). Ms. Sznyter states that

the proposed lodestar calculation represents work performed in this case, as shown in the itemized bill, at hourly rates of $220 for attorneys and $70 for paralegals and clerks. (ECF No. 10, Ex. 5 ¶¶ 2, 4.) The itemization of legal fees and costs shows that 13.5 hours of work was performed by the law firm retained by plaintiffs in this matter.[10] (ECF No. 10, Ex. 6.) The itemized bill also demonstrates that the work performed included the following activities: preparing the complaint and related papers; communicating with the client, co-counsel, the defendant, the auditor, and the process server; preparing the status report; and preparing the instant Motion. (Id.) The undersigned finds that the time spent and hourly rate are reasonable and consistent with attorney fee awards in similar cases, and accordingly, recommends granting plaintiffs' request for $2,370.00 in attorneys' fees.

Finally, the undersigned finds that plaintiffs' litigation costs of $507.03 are reasonable and documented in the record (ECF No. 1); (ECF No. 10, Ex. 6) and recommends granting this request. See Schedule of Fees, http://www.mdd.uscourts.gov/publications/Forms/ScheduleofFees.pdf (June 29, 2009) (cost of filing a civil action in this court is $350.00).

### 2. Injunctive Relief

Finally, plaintiffs request that the court issue an injunction requiring defendant to file remittance reports. (ECF Nos. 10-1 ¶ 4 & Ex. 1 ¶ 12.) ERISA and the CBA both provide for an award of "other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2); (ECF No. 10, Ex.4 § 10.12(b)). Here, although plaintiffs request an injunction requiring defendant to file remittance reports in their Motion (ECF Nos. 10-1 ¶ 4 & Ex. 1 ¶ 12),

---

[10] Each of the attorneys who performed work in this case have practiced law for the requisite number of years so as to qualify for an hourly rate of $220 in accordance with this court's Local Rules. Loc. R. App. B. § 3. The $70 hourly rate that plaintiffs seek for work performed in this case by the legal assistants is below the hourly rate of $95-115 for work performed by paralegals and law clerks set forth in the Local Rules. Id.

they did not request this form of equitable relief in their Complaint. (ECF No. 1.) Rule 54(c) of the Federal Rules of Civil Procedure provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Accordingly, the undersigned recommends that plaintiffs' request for an injunction requiring defendant to file remittance reports be denied as it differs from the relief sought in the Complaint.

### IV. **CONCLUSION**

In sum, the undersigned recommends that:

1. The court GRANT plaintiffs' Motion for Judgment by Default by the Court Pursuant to Federal Rule of Civil Procedure 55(b)(2) against Defendant (ECF No. 10) insofar as it relates to the Pension Fund and the Annuity Plan and DENY plaintiffs' Motion for Default Judgment (ECF No. 10) as it relates to FTI, the PAT Fund, and LMCI (the "Ancillary Funds"); and

2. The court award plaintiffs judgment in the amount of $154,856.37, representing damages for unpaid contributions in the amount of $119,953.22, interest in the amount of $5,254.87, liquidated damages in the amount of $23,990.64, audit costs in the amount of $2,780.61, attorneys' fees of $2,370.00, and $507.03 in costs of suit; and

3. The court deny plaintiffs' request for an injunction requiring defendant to submit remittance reports.

The undersigned also directs the Clerk to mail a copy of this Report and Recommendation to defendant at the address listed on plaintiffs' Complaint. (ECF No. 1.)

Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Date:   8-8-12                                                            /s/
                                                               Beth P. Gesner
                                                               United States Magistrate Judge